This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 50
The People &c.,
             Respondent,
        v.
Andrew R. Bushey,
             Appellant.



             Barry Nelson Covert, for appellant.
             Raymond C. Herman, for respondent.




DiFIORE, Chief Judge:

To ensure the safety of our roads, a police officer may run a license plate number through a government database to check for any outstanding violations or suspensions on the registration of the vehicle. We hold that such a check, even without any suspicion of wrongdoing, is permissible, and does not constitute

- 1 -

a search.  We further hold that information obtained indicating the registration of the vehicle is in violation of the law as a result of this check may provide probable cause for the officer to stop the driver of the vehicle.

I.

In the early morning hours of August 10, 2014, a Buffalo State University police officer observed a vehicle operated by defendant drive past him.  The officer testified at the suppression hearing that he did not observe any violations of the Vehicles and Traffic Law, nor was defendant's driving erratic or unusual in any way.  Nevertheless, the officer manually entered the car's license plate number into his patrol car's computer system.  This computer system was linked to a Department of Motor Vehicle (DMV) database which provided information about the registration of the vehicle and any potential suspensions or alerts associated with the vehicle.  After running the plate, the officer discovered that the vehicle's registration was suspended due to unpaid parking tickets and, acting upon that information, he followed and stopped the vehicle defendant was driving.  During the traffic stop, again using the database, the officer learned that defendant's license was also suspended.  Based on his observations of defendant during the traffic stop, the officer arrested defendant for driving while intoxicated, along with violations for operating without a valid registration or license.

At the hearing granted upon defendant's motion to suppress evidence, defendant challenged the lawfulness of the stop of the vehicle and his person, on the ground that the officer conducted an impermissible search when he ran the license plate of the vehicle through the DMV computer. Defendant argued that the officer had no legal basis to run the license plate number because the alleged standard for manually running a license plate is the same probable cause standard for stopping a person driving a vehicle. The People responded that defendant's legal argument was not supported by case law, and in any event, that running the license plate did not constitute a police encounter or intrusion. Citing to People v Ingle (36 NY2d 413 [1975]), the suppression court ruled that the officer had no cause to run the license plate and no reasonable suspicion to justify his stop of the car, and thus suppressed the evidence and dismissed the charges. The intermediate appellate court reversed, determining that both the license plate check and the stop were lawful. A Judge of this Court granted defendant leave to appeal (26 NY3d 1108 [2016]), and we now affirm.

II.

We start with the premise that "[s]ince Katz, the existence of a privacy interest within the Fourth Amendment's protective ambit has been understood to depend upon whether the individual asserting the interest has demonstrated a subjective expectation of privacy and whether that expectation would be

accepted as reasonable by society" (People v Weaver, 12 NY3d 433, 439 [2009], citing Katz v United States, 389 US 347, 361 [1967] [Harlan, J., concurring]).  The question we must answer here is whether a driver has a reasonable expectation of privacy in information provided to the DMV concerning his or her registration of a vehicle operated on a public roadway, which is accessible to police officers through the DMV database.

As defendant concedes, a driver does not have any reasonable expectation of privacy in the license plate number itself, nor would any expectation in such publicly exposed information be recognized as reasonable by society.  We now conclude that a driver has no expectation of privacy in the DMV database information associated with a license plate number.  Our Vehicle and Traffic Law provides a comprehensive set of requirements for lawfully operating a vehicle in the State of New York.  It mandates that

> "[n]o person shall operate, drive or park a
> motor vehicle on the public highways of this
> state unless such vehicle shall have a
> distinctive number assigned to it by the
> commissioner and a set of number plates
> issued by the commissioner with a number and
> other identification matter if any,
> corresponding to that of the certificate of
> registration conspicuously displayed"
> (Vehicle and Traffic Law § 402[1][a]).

We have long recognized that "[o]ne of the important objects of registration of motor vehicles is to facilitate the identification of the owner" (Shuba v Greendonner, 271 NY 189, 192 [1936]; see also Matter of Froslid v Hults, 20 AD2d 498, 503

[2d Dept 1964] ["the purpose of the license plate of an automobile is for ready identification of the owner by the police and by the public"]).  This purpose is accomplished when a police officer is able to observe the physical plate number and access DMV information associated with it.

Though this Court has not addressed the particular question of whether a license plate check constitutes a search, every federal circuit that has considered the issue has held that it does not (see United States v Miranda-Sotolongo, 827 F3d 663, 668 [7th Cir 2016] ["observing and recording the registration number was not a search within the meaning of the Fourth Amendment.  Nor was it a search to use the registration tag number (in which defendant had no reasonable expectation of privacy) to retrieve the registration information present in the law enforcement database"]; United States v Sanchez, 612 F3d 1, 3 n 1 [1st Cir 2010]; United States v Diaz-Castaneda, 494 F3d 1146, 1152 [9th Cir 2007] ["when police officers see a license plate in plain view, and then use that plate to access additional non-private information about the car and its owner, they do not conduct a Fourth Amendment search"]; United States v Ellison, 462 F3d 557, 563 [6th Cir 2006] ["Thus, so long as the officer had a right to be in a position to observe the defendant's license plate, any such observation and corresponding use of the information on the plate does not violate the Fourth Amendment"]; Olabisiomotosho v City of Houston, 185 F3d 521, 529 [5th Cir

1999]; United States v Walraven, 892 F2d 972, 974 [10th Cir 1989]). Lower courts of this state reached the same conclusion (see People v Davila, 27 Misc 3d 921, 925 [Sup Ct, Bronx County 2010], affd 137 AD3d 655 [1st Dept 2016]; People v Diggs, 38 AD3d 565, 565 [2d Dept 2007], lv denied 9 NY3d 922 [2007]; People v Brown, 306 AD2d 291, 291 [2d Dept 2003], lv denied 100 NY2d 618 [2003]), as have courts in other states (see People v Goodum, 356 Ill App 3d 1081, 1085-1086, 828 NE2d 835, 840 [Ill App Ct 2005]; Commonwealth v Muckle, 61 Mass App Ct 678, 681, 814 NE2d 7, 11 [Mass App Ct 2004]; State v Richter, 145 NH 640, 640-641, 765 A2d 687, 688 [2000]).

Because the purpose of a license plate is to readily facilitate the identification of the registered owner of the vehicle for the administration of public safety, a person has no reasonable expectation of privacy in the information acquired by the State for this purpose and contained in a law enforcement or DMV database. Indeed, the information is typically provided voluntarily by a driver to a government agency in exchange for the privilege of a valid license and registration.[1] Considering

---

[1] Defendant argues on appeal that the officer may have accessed private information, such as his social security number. Although this argument is not preserved for our review, we note that the record indicates only that the DMV database used by the officer here gave information about the vehicle's registration and defendant's license status, and the officer testified that the only relevant factor he discovered before stopping defendant was that the registration was suspended due to unpaid parking tickets.

that police officers are authorized by law to inspect and check for violations of licensing and registration requirements (see Vehicle and Traffic Law §§ 390, 401), drivers cannot claim any objectively reasonable expectation of privacy with respect to the DMV information being obtained by law enforcement.[2]  An officer's observation of that which is publicly displayed and the use of the information relative thereto contained in the DMV database does not violate defendant's Fourth Amendment rights, nor any provision of our New York State Constitution.  As defendant did not have any reasonable expectation of privacy in either his license plate or the information lawfully obtained and accessible through the DMV database, there was no search or seizure cognizable under federal or state constitutional law.

                              III.

        Police stops of automobiles in New York State are legal "when there exists at least a reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime" (People v Spencer, 84 NY2d 749, 753 [1995]).  While "a police officer may [not] stop an automobile, arbitrarily chosen from the stream of traffic on a

_____

        [2] To the extent defendant relies on the "Driver's Privacy Protection Act of 1994," which governs the release of information contained in DMV databases, that statute creates no reasonable expectation that license and registration information is kept private from law enforcement.  The statute permits the release of DMV information "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions" (18 USC § 2721 [b] [1]).

public highway only because of the unusual but irrelevant appearance of the vehicle, solely to examine the motorist's license and registration" (Ingle, 36 NY2d at 414), defendant's freedom of movement was never "stopped" until after the officer ran his license plate and obtained probable cause to believe the vehicle was being operated with a suspended registration.  We prohibit arbitrary traffic stops because they constitute unreasonable "seizures" of persons in violation of the constitution (see id. at 418).  But here, the stop of defendant's car occurred only after the check had supplied the officer a reason to do so.  And while we are mindful of the concerns about license plate checks,

> "the possibilities of database error and police officer abuse, while real, do not create a legitimate expectation of privacy where none existed before.  Government actions do not become Fourth Amendment searches simply because they might be carried out improperly.  If an officer does go outside the proper bounds of a license plate search, it is that misconduct that might give rise to a constitutional or statutory violation" (Diaz-Castaneda, 494 F3d at 1152).

Nothing in the record before us suggests there was anything unreasonable about the police officer's actions or that the officer had any illegal motives.  He ran the license plate and accessed the DMV database in the performance of his official duties.  Therefore, the check was lawful, and the information from the database provided him with a valid reason to stop defendant's car.

Accordingly, the order of the County Court should be affirmed.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Chief Judge DiFiore.  Judges Rivera, Stein, Fahey, Garcia and Wilson concur.

Decided May 4, 2017